UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
TERRANCE REED, *pro se*,          :
                                  :
                    Petitioner,   :
                                  :     **MEMORANDUM AND ORDER**
       -against-                  :     12-CV-~~6429~~(DLI)
                                  :           5429
UNITED STATES OF AMERICA,         :
                                  :
                    Respondent.   :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

Terrance Reed ("Petitioner") was convicted, upon his plea of guilty, of conspiracy to distribute and possess with intent to distribute cocaine base ("crack"). On February 5, 2010, this Court sentenced him to 235 months of incarceration, followed by five years of supervised release. (J. as to Terrance Reed, Docket No. 08-CR-187,[1] Doc. Entry No. 286.) Petitioner timely appealed. On September 22, 2011, the Second Circuit Court of Appeals ("Second Circuit") dismissed Petitioner's appeal as barred by the appellate waiver contained in his written plea agreement. *See United States v. Banks et al.*, No. 10-CR-709 (2d Cir. 2011). Petitioner did not file a petition for a writ of certiorari to the Supreme Court. (*See id.*)

On October 26, 2012, Petitioner, proceeding *pro se*,[2] filed the instant petition for writ of habeas corpus challenging his conviction pursuant to 28 U.S.C. § 2255. (*See generally* Mot. to

---

[1] All references to "Docket No. 08-CR-187" are to the criminal case underlying the instant Petition.

[2] In reviewing the Petition, the court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the court interprets the Motion "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

1

Vacate, Set Aside or Correct Sentence (2255) ("Pet'r's Mot."), Doc. Entry No. 1.) For the reasons stated below, the motion is denied in its entirety.

## BACKGROUND

### I.  Plea Agreement and Allocution

On March 5, 2009, Petitioner pled guilty before the Hon. James Orenstein, United States Magistrate Judge, to one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of crack (Count 1 of the Indictment). (Tr.[3] at 18-19, Docket No. 08-CR-187, Doc. Entry No. 216; Indictment at 1, Docket No. 08-CR-187, Doc. Entry No.1.) The Indictment also charged Petitioner with one count of conspiracy to distribute and possess with intent to distribute 5 grams or more of cocaine (Count Two of the Indictment), which Petitioner did not plead guilty to, but, was considered for sentencing purposes as outlined in the plea agreement. (Indictment at 2; Plea Agreement attached to Gov't's Mem. of Law in Opp'n to Pet. to Vacate Conviction under 28 U.S.C. § 2255 ("Gov't's Mem.") as Exhibit 4, ¶ 2.) Also included among the terms of the plea agreement, was an estimated advisory United States Sentencing Guidelines ("USSG") sentence range of 235 to 293 months' imprisonment to which Petitioner would be subject, based upon an adjusted offense level of 33, and assuming Petitioner fell within Criminal History Category VI. (Plea Agreement ¶ 2.) By entering into the plea agreement, Petitioner waived his right to an appeal or to otherwise challenge his convictions pursuant to 28 U.S.C. § 2255 if the Court imposed a sentence of 327 months or less (*Id.* ¶ 4).

During the plea allocation, Petitioner, under oath, confirmed that he had read and reviewed the plea agreement and that he understood all of its terms. (Tr. at 10-11.) When the magistrate judge advised Petitioner that he neither could appeal nor withdraw his plea at a later

---
[3] "Tr." refers to the transcript of Petitioner's guilty plea allocution before Magistrate Judge Orenstein on March 5, 2009.

time if he received a sentence of 327 months or less, Petitioner affirmed that he understood. (*Id.* at 16-17.) Additionally, Petitioner stated that he was satisfied with his attorney's representation. (*Id.* at 18.) Petitioner iterated in his own words that he was pleading guilty to conspiracy to distribute "50 grams of cocaine base . . . ." (*Id.* at 19.) The magistrate judge found that Petitioner fully understood his rights and the consequences of his plea, was acting voluntarily, and there was a factual basis for the plea, and, accordingly, recommended that this Court accept Petitioner's guilty plea. (*Id.* at 3-5, 17-20.)

**II.     Presentence Investigation Report, Sentencing Hearing, and Direct Appeal**

On February 5, 2010, upon reviewing the transcript of Petitioner's guilty plea allocution, this Court adopted magistrate judge's recommendation and accepted Petitioner's guilty plea. The U.S. Probation Department ("Probation") filed a Presentence Investigation Report ("PSR") prior to Petitioner's sentencing. (*See* Revised PSR attached as Exhibit 1 to Gov't's Mem.) Probation identified Petitioner as a career offender because he was convicted of two prior drug felonies, one in Maryland on May 11, 1987 and the other in Ohio on April 13, 1996. (*Id.* at 9-10.) In calculating the advisory sentence guideline range, Probation assessed a total offense level of 34, which the Court decreased to 33 at the sentencing hearing upon granting the government's motion for a one-point downward departure based upon a global plea agreement. (*Id.* at 10; Plea Agreement, ¶ 2.) Petitioner's sentence guideline range as ultimately calculated by the Court was the same as that contained in the plea agreement, 235 to 293 months' imprisonment.

On February 5, 2010, Petitioner appeared before this Court for sentencing. That same morning, Petitioner filed a *pro se* motion to withdraw his guilty plea arguing, among other things, that he did not plead guilty to conspiracy to distribute five kilograms of cocaine, but only to distribute 50 grams of crack. (Sentencing Tr. attached as Exhibit 5 to Gov't's Mem. at 3-4;

3

Pet'r's *Pro Se* Motion attached as Exhibit 6 to Gov't's Mem. at 1-2.)  At the sentencing hearing, Petitioner's attorney alerted the Court that there may be a conflict of interest between him and Petitioner.  (Sentencing Tr. at 8.)  The Court read through the plea allocution line by line, explaining to Petitioner that he had pled guilty only to Count 1, conspiracy to distribute 50 grams of crack.  (*Id.* at 11-17.)  The Court then gave Petitioner the opportunity to discuss the motion and his plea with his lawyer.  (*Id.* at 11-17.)  After discussing the plea with the Court and his attorney, Petitioner withdrew the motion because he was "mistaken" and Petitioner's attorney withdrew his conflict of interest notice.  (*Id.* at 19-20.)  The Court then adopted the magistrate judge's recommendation to accept Petitioner's guilty plea.  (*Id.* at 21.)

Before sentence was imposed, defense counsel argued that Petitioner's career offender status should be reduced due to an issue regarding his underlying Maryland conviction.  (*Id.* at 39-44.)  The Court found that the PSR alleged sufficient facts about the Maryland conviction to warrant the career offender status and that Petitioner had complicated the Maryland case by failing to surrender.  (*Id.* at 43.)  Furthermore, the Court found that Petitioner exhibited hallmarks of a career offender because of his drug conviction history.  (*Id.* at 65-68.)  Therefore, the Court found his career offender status appropriate and sentenced Petitioner, *inter alia*, to 235 months imprisonment (the low end of the sentence guideline range) followed by 5 years of supervised release with special conditions.  (*Id.* at 68.)

Petitioner appealed the Court's sentence to the United States Court of Appeals for the Second Circuit on the claiming ineffective assistance of counsel and that the career offender adjudication was unsubstantiated.  Petitioner also requested that his appeal be held in abeyance pending Congressional action on the Fair Sentencing Act.  (*See generally* Brief and Appendix for Appellant Terrance Reed attached as Exhibit 8 to Gov't's Mem.)  The Second Circuit rejected

the appeal on September 22, 2011 because Petitioner had waived his right to appeal as part of his plea agreement.  (*See United States v. Banks et al.*, No. 10-CR-709 (2d Cir. 2011; Plea Agreement, ¶ 4.)

### III.   The § 2255 Motion

Petitioner timely filed this Section 2255 motion contending that: 1)  the Court never accepted his guilty plea (Pet'r's Mot. at 29-30); 2) Petitioner was confused as to the terms in the ambiguous plea agreement (*Id.* at 19-22, 27-28); 3) the Court participated in the plea negotiation process (*Id.* at 28); 4) Petitioner's guilty plea was not knowingly, voluntarily, and intelligently entered due to ineffective assistance of counsel; 5) defense counsel failed to argue that Petitioner had a right to withdraw his guilty plea (*Id.* at 9-15, 22); 6) the Court failed to inquire into defense counsel's potential conflict of interest and Petitioner was harmed as a result (*Id.* at 15-19, 22-24); 7) appellate counsel was ineffective for failing to raise trial counsel's deficiencies (*Id.* at 6-9); and 8) Petitioner's career offender designation was never proven (*Id*. at 30-33).  The government opposes the motion on the grounds that:  1) Petitioner was not denied effective assistance of counsel (Gov't's Mem. at 10); 2) the Court did not fail to initiate an inquiry into a potential conflict (*Id.* at 19); and 3) Petitioner's career offender designation was proper (*Id.* at 24).

## DISCUSSION

### I.   The Court Accepted Petitioner's Guilty Plea

As an initial matter, Petitioner's contention that the Court never accepted Petitioner's guilty plea is utterly without merit and is belied by the record.  The Court definitely accepted Petitioner's guilty plea, stating "I do accept the recommendation of the magistrate judge and I

5

accept Mr. Reed's guilty plea to count one of the indictment." (Sentencing Tr. at 21.) Therefore, the motion is denied on this ground.

## II. Petitioner Waived His Right to Collaterally Challenge His Conviction

Petitioner's motion is barred by his waiver in the plea agreement. In general, the Second Circuit rejects attempts to challenge a conviction when a petitioner waived that right pursuant to a written plea agreement. *See Garcia-Santos v. United States*, 273 F.3d 506, 508-09 (2d Cir. 2001) (*per curiam*); *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995). By entering into the plea agreement, Petitioner explicitly agreed "not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 327 months or below." (Plea Agreement, ¶ 4; Tr. of Criminal Cause for Pleading at 16.) Petitioner waived his right to challenge his conviction because he ultimately received a sentence of 235 months of imprisonment, well below the waiver of appeal threshold stipulated in his plea agreement. Accordingly, Petitioner's habeas claims are dismissed as barred by the plea agreement, unless the Petitioner can show that the waiver is invalid because the plea agreement was not knowingly, voluntarily, and intelligently executed. *See United States v. Morgan,* 386 F.3d 376, 378-89 (2d Cir. 2004); *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000) (holding that "when a defendant has executed . . . a waiver of the right to appeal, but has nonetheless filed a notice of appeal, . . . [the brief may] address[] only the limited issues of: (1) whether defendant's plea and waiver of appellate rights were knowing, voluntary, and competent, . . . or (2) whether it would be against the defendant's interest to contest his plea . . . and (3) any issues implicating a defendant's constitutional or statutory rights that either cannot be waived, or cannot be considered waived by the defendant in light of the particular circumstances.") (internal citations

omitted). The Court thus considers only Petitioner's claims relating to the knowing, voluntary, and intelligent nature of his guilty plea and appellate waiver.

### III. Petitioner's Guilty Plea Was Knowingly, Voluntarily, and Intelligently Made

#### A. Petitioner Understood the Clear Terms of the Plea Agreement

Petitioner first alleges that he did not knowingly and intelligently execute the plea agreement because he was confused as to the terms of the plea agreement and that the plea agreement was ambiguous. (Pet'r's Mem. at 19-22, 27-28.) "[I]n the absence of any credible evidence to the contrary, the court is permitted to rely upon the defendant's sworn statements, made in open court, that[] his plea was knowing and voluntary." *Pringle v. United States*, 2011 WL 3792820, at *3 (S.D.N.Y. Aug. 25, 2011) (internal citation omitted); *see also United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011) ("'A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.'") (quoting *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). This is especially true when the defendant "discussed the plea with his attorney, he knew that he could not withdraw the plea, he knew that no promises had been made except those contained in the plea agreement, and he was satisfied with the advice of counsel." *Pringle*, 2011 WL 3792820 at *3 (internal citation omitted).

The plea allocution and terms of the plea agreement are clear and unambiguous. The magistrate judge went through the individual terms of the plea agreement with Petitioner during the plea allocution including possible terms of imprisonment, appeal waiver, and Petitioner's inability to withdraw the plea once it was entered. (Tr. at 10-11, 16-20.) Notably, Petitioner stated, under oath, that he understood each individual term of the agreement. (*Id.*) Because Petitioner has not provided any evidence to the contrary. As such, the Court relies on

Petitioner's own sworn statements before the magistrate judge that he understood the terms of the plea agreement, including the waiver. Accordingly, the Court finds that Petitioner's execution of the plea agreement was knowing, voluntary, and intelligent and his waiver of right to appeal is valid, unless he received ineffective assistance of counsel, which claim is addressed below.

### B. Ineffective Assistance of Counsel

The Second Circuit has held that "a plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel." *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (citing *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998)). Therefore, a waiver is not enforceable if a defendant can demonstrate that he unknowingly or involuntarily agreed to the plea directly due to the ineffective assistance of his counsel. *See Hernandez*, 242 F.3d at 113-14.

The Court must evaluate Petitioner's claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 687-88. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Second, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. As explained by the Supreme Court, the order of analysis of the two Strickland prongs — performance and prejudice — is at the discretion of the district court. The

*Strickland* Court noted:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance.
>
> *Id*. at 694.

As discussed below, Petitioner has failed to demonstrate ineffective assistance of counsel under either prong of the S*trickland* standard.

### i. Petitioner's Trial Counsel Correctly Advised Petitioner that He was Pleading Guilty to Count One

Petitioner first argues that he did not enter into his plea agreement knowingly, voluntarily, and intelligently because his trial counsel told him he would plead guilty only to conspiracy to distribute 50 grams of crack and not also to conspiracy to distribute 5 kilograms of cocaine. (Pet'r's Mem. at 9-14.) This claim is meritless and is plainly belied by the record. Petitioner, in fact, did plead guilty only to Count One, conspiracy to distribute 50 grams of crack, and did not plead guilty to Count Two, conspiracy to distribute 5 kilograms of cocaine. (Tr. at 18-20.) Petitioner also indicated he understood he was pleading guilty to conspiracy to distribute

50 grams of crack at both the plea allocation (where he was under oath) and sentencing hearing.[4] (*See id.*; Sentencing Tr. at 9, 21-23.) Moreover, upon the imposition of sentence, the government moved to dismiss Count 2 (the 5-kilograms cocaine distribution conspiracy, which motion the Court granted.) (Sentencing Tr. at 69.) Therefore, defense's counsel's representation did not fall below an objective standard of reasonableness and Petitioner's ineffective assistance of counsel claim as to this argument is denied.

### ii. Petitioner Withdrew His Motion to Withdraw His Guilty Plea

Petitioner next contends that his trial attorney was ineffective for failing to advise him that he had an absolute right to withdraw his guilty plea. (Pet'r's Mem. at 25-26.) However, this claim lacks merit because Petitioner did in fact submit a motion to withdraw his guilty plea, which the Court discuss with Petitioner at the sentencing. Thus, whether Petitioner's lawyer acted reasonably and advised him properly is irrelevant as Petitioner suffered no prejudice. Therefore, Petitioner's claim of ineffective assistance of counsel on this ground is denied.

### iii. Petitioner's Attorney Did Not Labor under a Conflict of Interest

Lastly, Petitioner asserts that his lawyer was ineffective because he labored under a conflict of interest after Petitioner filed a motion to withdraw his guilty plea, and, as a result his

---

[4] At the plea allocation, Petitioner stated:

> Between June, 2007 and October, 2007, I agreed with others to distribute illegal drugs in Brooklyn and Queens. The quantity of drugs involved was 50 grams of cocaine base and five kilograms of cocaine. I assisted at least one other person and acquired these drugs which I knew he was then going to sell. I knew when I did this that this was an illegal act.

(Tr. at 19). Despite his expansive, incriminatory statement at the plea allocation, Petitioner only pled guilty to Count 1, conspiracy to distribute 50 grams of crack. His own statement may be the source of Petitioner's confusion. At the very least, this statement directly negates Petitioner's present argument that he did not intend to plead guilty to conspiracy to distribute 50 grams of crack and 5 kilograms of cocaine, when he voluntarily brought up both at the plea allocation.

guilty plea was not knowing and intelligent. (Pet'r's Mem. at 15-19, 22-24.) The government opposes, arguing that, based on the record, there was no conflict between Petitioner and his attorney. (Gov't's Mem. at 19-23.)

The Second Circuit has held that a conflict of interest is not established simply by "'expressing dissatisfaction with [an] attorney's performance.'" *United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000) (quoting *United States v. White*, 174 F.3d 290, 296 (2d Cir. 1999)). Rather, trial courts must inquire into the "basis of substantial complaints regarding counsel's performance" in order to determine whether an actual conflict of interest exists. *Id.* Additionally, "[t]he possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). Showing that a conflict adversely affected a lawyer's performance, requires the defendant to "'demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Lopez v. Scully*, 58 F.3d 38, 41 (2d Cir. 1995) (quoting *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994) (internal quotations omitted). Where the trial court conducts an "error-free plea allocution, advocacy by trial counsel on behalf of the withdrawal motion would not have constituted a viable alternative strategy." *Clendinen v. Unger*, 2006 WL 2465176, *9 (S.D.N.Y. Aug. 22, 2006)

Petitioner's claim that his lawyer labored under a conflict of interest during his *pro se* motion to withdraw his guilty plea is unfounded. As an initial matter, the Court conducted an inquiry into a potential conflict upon being alerted to it by defense counsel. The Court began its inquiry by reviewing the guilty plea minutes and clarifying to Petitioner that he, indeed had pled

11

guilty only to conspiracy to distribute crack and had not pled guilty to conspiracy to distribute cocaine. (Sentencing Tr. at 20.) After this clarification from the Court, Petitioner voluntarily withdrew his motion to vacate his guilty plea, telling the Court he was "mistaken" when he filed it. Additionally, Petitioner's lawyer, after discussion with his client, withdrew his notice to the Court that there was a potential conflict of interest, stating "I do not believe we have a conflict . . . ." (*Id.* at 20.) The issues having been resolved, the Court properly accepted the guilty plea.

Furthermore, even if a conflict of interest had existed, Petitioner failed to demonstrate how the conflict adversely affected his lawyer's performance or how it prejudiced him. As discussed above, Petitioner's plea allocution was error-free, and, therefore, Petitioner's counsel was not obligated to argue Petitioner's withdrawal motion as an alternative defense strategy. Notably, once the matter was clarified, Petitioner conceded that he had filed the motion in error and voluntarily withdrew his motion. His attorney then advocated zealously for Petitioner during the remainder of the sentencing hearing. Therefore, Petitioner was not prejudiced by any potential conflict of interest between him and his lawyer. As such, this claim is dismissed.

## CONCLUSION

As all of Petitioner's claims regarding the knowing, voluntary, and intelligent nature of Petitioner's guilty plea lack merit, the plea agreement is enforceable, the waiver of his right to appeal or collaterally attack his conviction is valid, and the remainder of Petitioner's claims, including those regarding the effectiveness of his appellate counsel, are dismissed as Petitioner had no right to appellate or collateral review of his conviction. Accordingly, this motion is dismissed with prejudice. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see*

FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
       August 13, 2015

                                         /s/
                                    DORA L. IRIZARRY
                                    United States District Judge

13